UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MULTIBANK 2009-1 RES-ADC VENTURE, LLC,<br><br>                            Plaintiff,<br>vs.<br><br>SAN DIEGO COMMUNITY HOUSING CORPORATION; COUNTY OF SAN DIEGO; CITY OF EL CAJON; et al.,<br><br>                           Defendants. | CASE NO. 09-CV-2880 JLS (NLS)<br><br>**ORDER: DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. No. 53) |

Presently before the Court is Plaintiff Multibank 2009-1 RES-ADC Venture LLC's motion for summary judgment against Defendant San Diego Community Housing Corporation (SDCHC). (Doc. No. 53.) Also before the Court are SDCHC's opposition (Doc. No. 55 (Opp'n)), SDCHC's evidentiary objections (Doc. No. 56 (Objs.)), Plaintiff's reply (Doc. No.59), and the parties' supplemental pleadings informing the Court regarding 12 U.S.C. § 1821(d)(2)(G)(i)(II) (Doc. Nos. 64 (SDCHC's Suppl. Mem.), 65 (Pl.'s Suppl. Mem.)).[1] Having considered the parties' arguments and the law, the Court **DENIES** Plaintiff's motion for summary judgment.

---

[1] On February 14, 2011, Plaintiff informed the Court, by way of a short supplemental pleading, of § 1821(d)(2)(G)(i)(II)'s existence. (Doc. No. 62.) Plaintiff contends that the statute "establish[es] that state law requirements relating to transfer of an instrument do not apply to transfers by the FDIC in its capacity as receiver." (*Id.* at 2.) On February 18, 2011, the Court directed the parties to file supplemental memoranda addressing the statute's effect on Plaintiff's motion for summary judgment. (Doc. No. 63.)

**BACKGROUND**

On or about January 24, 2005, SDCHC secured a loan in the principal amount of $3,485,000 from 1st Centennial Bank. (Doc. No. 53-2 (Pl.'s SSUMF) ¶ 6.) SDCHC executed a promissory note as evidence of its obligation to repay. (*Id.*; *see* Doc. Nos. 53-3 to -6 (Yaffe Decl.) Ex. C.)[2] The note was secured by a deed of trust encumbering the properties at 512 June Way and 513 La Rue Way, El Cajon, California. (Pl.'s SSUMF ¶ 12; *see* Doc. Nos. 53-7 to -10 (Lazar Decl. ISO MSJ) Ex. B (Pl.'s RFAs) Ex. G.)

The parties modified the terms of the promissory note five times to, *inter alia*, extend the maturity date and increase the principal amount. (Pl.'s SSUMF ¶¶ 7-11; *see* Pl.'s RFAs Exs. B–F.) The promissory note as finally modified obligated SCHDC to repay $4,117,000 on April 24, 2008. (Pl.'s SSUMF ¶ 10–11; *see* Pl.'s RFAs Ex. F.)

SDCHC defaulted on the loan in September 2007. (Pl.'s SSUMF ¶¶ 14–15, 19.) On November 17, 2009, the Federal Deposit Insurance Commission, as receiver of 1st Centennial Bank, filed a complaint for, *inter alia*, judicial foreclosure in San Diego Superior Court. (Doc. No. 1 Ex. A.) SDCHC removed the action to this Court on December 23, 2009. (Doc. No. 1.) On March 15, 2010, the Court granted the parties' joint motion to substitute Plaintiff in place of the FDIC as receiver of 1st Centennial Bank. (Doc. No. 19.)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where (1) the moving party demonstrates the absence of a genuine issue of material fact and (2) entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material," for purposes of Rule 56, means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

The initial burden of establishing the absence of a genuine issue of material fact falls on the

---

[2] SDCHC objects to the Court's consideration of "previously undisclosed" evidence accompanying the declaration of Michael Yaffe, Plaintiff's asset manager (Yaffe Decl. ¶¶ 1–2). (Objs. 3.) The Court relies only on admissible evidence in conjunction with this motion.

moving party. *Celotex*, 477 U.S. at 323. The movant can carry his burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 324. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

Plaintiff contends that it is entitled to a decree of foreclosure of the deed of trust that preserves Plaintiff's right to a deficiency judgment. (*See* Doc. No. 53-1 (Mem. ISO MSJ) 4–6.) According to SDCHC, however, genuine issues of material fact exist regarding whether Plaintiff can enforce the note. (Opp'n 4–9.) SDCHC also contends that, even if Plaintiff can enforce the note, Plaintiff is estopped from doing so because it entered into an agreement to sell the note to SDCHC. (Opp'n 10–12.)

**1.     Enforceability**

An action on a promissory note is an action on a contract. *FPI Dev., Inc. v. Nakashima*, 282 Cal. Rptr. 508, 517 (Cal. Ct. App. 1991). The elements of the cause of action are (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff. *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 272 Cal. Rptr. 387, 395 (Cal. Ct. App. 1990).

***A.     The Allonge***

SDCHC contends that Plaintiff is not entitled to enforce the note because the allonge

1  purporting to transfer the promissory note from the FDIC to Plaintiff is not "firmly affixed" to the
2  note. (Opp'n 5–6.) According to Plaintiff, Mr. Yaffe's declaration establishes that Plaintiff is the
3  holder of the note and therefore entitled to enforce it. (Reply 2–3.)

4  "The burden of proving an assignment falls upon the party asserting rights thereunder."
5  *Cockerell v. Title Ins. & Trust Co.*, 267 P.2d 16, 21 (1954). Under California law, the holder of a note
6  has a right to enforce it. Cal. Com. Code § 3301. A holder is defined as "the person in possession of
7  a negotiable instrument that is payable either to bearer or, to an identified person that is the person in
8  possession." *Id.* § 1201.

9  Any endorsement of a negotiable instrument must be "made on [the] instrument." *Id.* § 3204.
10 "For the purpose of determining whether a signature is made on an instrument, a paper affixed to the
11 instrument is part of the instrument." *Id.* "An indorsement on an allonge is valid even though there
12 is sufficient space on the instrument for an indorsement." U.C.C. § 3-204 cmt. 1; *see Zengen, Inc. v.*
13 *Comerica Bank*, 158 P.3d 800, 807 (Cal. 2007) (holding that, where legislature has adopted provision
14 of the UCC exactly as written, UCC comments are persuasive in interpreting the statute).

15 The Court agrees with SDCHC. Plaintiff has failed to demonstrate that it is the holder of the
16 note because, although it is in possession of the note, it has failed to demonstrate that the note is
17 properly payable to Plaintiff. An allonge purporting to make the note payable to Plaintiff accompanies
18 the Mr. Yaffe's declaration. (Yaffe Decl. Ex. B, at 1.) However, for the allonge to constitute part of
19 the note, it must be on "a paper affixed to the instrument." Cal. Com. Code § 3204. Here, the
20 evidence does not demonstrate that the allonge is affixed to the note. The allonge is on a separate
21 sheet of paper; there is no evidence that it is stapled or otherwise attached to the note. *See, e.g.*,
22 *Adams v. Madison Realty & Dev., Inc.*, 853 F.2d 163, 166 (3d Cir. 1988) (concluding that notes had
23 not been properly negotiated because indorsement sheets "were not physically attached to the
24 instruments in any way"); *In re Weisband*, 427 B.R. 13, 18–20 (Bankr. D. Ariz. 2010) (holding that
25 purported creditor lacked standing as holder of note because there was no evidence that endorsement
26 to creditor was stapled or otherwise attached to the rest of the note).

27 Plaintiff contends that it need not show that the allonge is attached to the note because Mr.
28 Yaffe's declaration establishes that Plaintiff is the holder of the note. According to Plaintiff, *LLP*

*Mortgage v. Bizar*, 24 Cal. Rptr. 3d 598, 601–02 (Cal. Ct. App. 2005), stands for the proposition that a loan servicing agent can competently testify as to the holder of the loan. The Court concludes that Plaintiff misreads *LLP Mortgage*. *LLP Mortgage* only holds that a custodian of records of a borrower's indebtedness is competent to establish the authenticity of the borrower's loan documents. 24 Cal. Rptr. 3d at 601–02. It does not hold that a loan servicing agent's testimony is conclusive as to the holder of the loan. Mr. Yaffe's ability to authenticate the allonge is not in dispute; his statement that the allonge is affixed to the note would probably satisfy section 3204. *See, e.g.*, *In re Weisband*, 427 B.R. at 19 (concluding allonge was invalid because there was "no *evidence* that it was stapled or otherwise attached" to the note). However, no such statement appears in his declaration.[3]

Plaintiff also contends that the provisions of 12 U.S.C. § 1821(d)(2)(G)(i)(II)[4] "allow for the transfer of loan assets without the necessity or burden of complying with state law requirements, such as the formal attachment of an allonge." (Pl.'s Suppl. Mem. 2.) Therefore, according to Plaintiff, the transfer of the note from the FDIC to Plaintiff is valid, notwithstanding the attachment of the allonge. (*Id.*)

Section 1821(d)(2)(G)(i)(II) preempts state law to the extent that state law conflicts with the statute. *Waterview Mgmt. Co. v. FDIC*, 105 F.3d 696, 699–702 (D.C. Cir. 1997); *Sahni v. Am. Diversified Partners*, 83 F.3d 1054, 1059 (9th Cir. 1996). In *Sahni*, the Ninth Circuit held that § 1821(d)(2)(G)(i)(II) preempted California Corporations Code section 15509, which required limited partners' consent to transfer partnerships that came into the hands of the FDIC in its capacity as receiver. 83 F.3d at 1059. To the extent that section 15509 required limited partners' consent, it directly conflicted § 1821(d)(2)(G)(i)(II)'s provision that the FDIC may transfer receivership assets "without any approval, assignment, or *consent* with respect to such transfer." *Id.* Here,

---

[3] In its supplemental memorandum, Plaintiff contends that *General Financial Services v. Thompson*, 987 F. Supp. 505, 508–09 (M.D. La. 1997), also holds that an affidavit of ownership is "sufficient evidence to establish the Plaintiff's right to enforce the notes." (Pl.'s Suppl. Mem. 3.) There, however, the FDIC was proceeding under Louisiana Revised Statutes 13:3740 and 13:3741, which govern lost instruments. *General Financial*, 987 F. Supp. at 509. Here, Plaintiff does not contend that the note is lost, and accordingly, *General Financial* is inapposite.

[4] Section 1821(d)(2)(G)(i)(II) provides that the FDIC may, as conservator or receiver, "transfer any asset or liability of the institution in default (including assets and liabilities associate with any trust business) without any approval, assignment, or consent with respect to such transfer."

1 § 1821(d)(2)(G)(i)(II) does not conflict with section 3204's requirement that an allonge be affixed to the note it transfers because section 3204 does not require "approval, assignment, or consent" to the transfer. Accordingly, section 3204 is not preempted, and the FDIC had to comply with the statute when it transferred the note to Plaintiff. *Cf. Am. Int'l Enters. v. FDIC*, 3 F.3d 1263, 1267–69 (9th Cir. 1993) (holding that FDIC must comply with California statute of frauds when liquidating assets of failed financial institution).

Because a genuine issue of material fact exists regarding whether the allonge is affixed to the note, and therefore whether Plaintiff is the holder of the note, Plaintiff's motion for summary judgment is **DENIED**.

### B.   *Authority*

Next, SDCHC contends that Plaintiff is not entitled to enforce the note because it has not shown that the FDIC authorized the transfer of the note to Plaintiff or that the signatory on the allonge[5] had authority to transfer the note. (Opp'n 6–9.) Plaintiff again asserts that Mr. Yaffe's declaration establishes the assignment of the note to Multibank, and "nothing further is required to make the deed of trust enforceable." (Reply 5.)

SDCHC submits that only the FDIC's board of directors can approve a sale of receivership assets for less than their book value. (Opp'n 7 (citing Doc. No. 55 (Markow Decl.) Ex. 3 ¶ 6).) "No private contractor possesses any authority to sell assets on behalf of FDIC." (*Id.* (citing Markow Decl. Ex. 3 ¶ 7).) Moreover, SDCHC contends that Plaintiff has failed to establish that Vanessa Orta, the signatory on the allonge, had authority to transfer the note. (Opp'n 7.)

First, the Court rejects Plaintiff's contention that Mr. Yaffe's declaration establishes that Plaintiff is the holder of the note for the reasons stated *supra*.

Second, the Court also rejects SDCHC's contention that Plaintiff has failed to establish that the FDIC approved the sale of the note to Plaintiff. SDCHC relies on the declaration of Peggy

---

[5] SDCHC actually argues that Plaintiff is not entitled to enforce the note because it has not shown that the signatory on the allonge *and the assignment of real estate deed of trust* had authority to transfer the note. (*See* Opp'n 7 ("[T]here is no competent proof that the Note *or Deed of Trust* were ever assigned by FDIC to Multibank." (emphasis added)).) However, it is well established that the collateral follows the note. *See* Cal. Civ. Code § 2936 ("The assignment of a debt secured by mortgage carries with it the security."). Thus, if Plaintiff can establish that the FDIC assigned the note to it, it need not establish a separate assignment of the deed of trust.

1 Carollo, which states that only the FDIC's board of directors can approve a sale or compromise of
2 receivership assets for less than book value. (Markow Decl. Ex. 3 ¶ 6.) According to Ms. Carollo,
3 no "case seeking approval of a sale or compromise of the SDCHC Note for less than book value was
4 []ever prepared or submitted to" her in her capacity as Post Closing Asset Manager at 1st Centennial
5 Bank. (Markow Decl. Ex. 3 ¶ 10.)

6       SDCHC's papers, however, are devoid of any evidence that the FDIC's transfer of the note to
7 Plaintiff was for less than book value and hence subject to the approval process. Without this
8 evidence, Ms. Carollo's declaration is irrelevant because it only addresses the sale or compromise of
9 FDIC assets for less than book value. Accordingly, the Court finds that SDCHC has failed to rebut
10 Plaintiff's prima facie showing that the FDIC approved the sale of the note to Plaintiff. (*See generally*
11 Yaffe Decl. ¶¶ 4–6.)

12       Third, the Court agrees that Plaintiff's failure to establish, in writing, Ms. Orta's authority to
13 transfer the note bars summary judgment. Under California Civil Code section 2309, "authority to
14 enter into a contract required by law to be in writing can only be given by an instrument in writing."
15 And California Commercial Code section 3204 requires an endorsement effecting the transfer of a
16 promissory note to be made in writing, on the instrument or an allonge affixed thereto. Thus,
17 California Civil Code section 2309 applies, and Plaintiff must establish Ms. Orta's authority, in
18 writing, to carry its affirmative burden of demonstrating its entitlement to enforce the note. *See*
19 *Cockerell*, 267 P.2d at 21. No evidence of Ms. Orta's authority appears in the record.

20       Accordingly, the Court concludes that no genuine issue of material fact exists regarding
21 whether the FDIC approved the sale of the note to Plaintiff. However, the Court finds that a genuine
22 issue of material fact regarding whether Ms. Orta had authority to transfer the note bars summary
23 judgment.

24 **2. Estoppel**

25       SDCHC also contends that Plaintiff is estopped from enforcing the note by virtue of the
26 FDIC's purported prior agreement to sell the note to SDCHC. (Opp'n 10–12.) Plaintiff replies that
27 "there was no agreement for sale of the SDCHC note and the law provides no basis for the estoppel
28 claim." (Reply 6.)

Under the doctrine of equitable estoppel, "a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment." *Strong v. Cnty. of Santa Cruz*, 543 P.2d 264, 266 (Cal. 1975). Four elements must be present to apply the doctrine of equitable estoppel:

> (1) [T]he party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

*Id.*; *accord City of Goleta v. Superior Court*, 147 P.3d 1037, 1042 (Cal. 2006).[6]

SDCHC contends that "[t]his case is a classic presentation of an equitable estoppel" because the FDIC, through its agent Don Bruner, and SDCHC, through its agent Robert St. Germain, agreed that Plaintiff would sell its interest in the note to SDCHC "for the appraised value of the property less [twenty percent]." (Opp'n 10–11.) Contrary to SDCHC's assertion, however, the parties never reached an agreement regarding the sale of the note.

According to SDCHC, it offered to purchase the note for $1.4 million. (Opp'n 3 (citing Markow Decl. Ex. 1 (St. Germain Dep.) 51–52.) In a telephone call between Mr. Bruner and Mr. St. Germain, the FDIC allegedly made a counter-offer to sell the note to SDCHC for $1,519,200. (*Id.* (citing St. Germain Dep. 60.) In the same telephone call, SDCHC allegedly accepted the FDIC's offer. (*Id.* (citing St. Germain Dep. 61).)

However, the documentation of the purported transaction belies SDCHC's contention. Mr. St. Germain followed up on the conversation in which he allegedly accepted the FDIC's offer with an e-mail, in which he indicated that SDCHC's legal team would "prepare the formal letter" memorializing the conversation. (Markow Decl. Ex. 2.) The formal letter delivered to the FDIC stated: "[SDCHC] is pleased to submit to the [FDIC] this revised *offer to purchase* the Loan . . . for the sum of [$1,519,200]." (Doc. No. 59-1 (Lazar Decl. ISO Reply) Ex. B, at Ex. 17 (emphasis added); *see also id.* at Ex. 31 ("[A]fter we made an original offer, your came back and we were told to increase

---

[6] SDCHC asks the Court to follow the "broader" equitable estoppel test set forth in *City of Hollister v. Monterey Insurance Co.*, 81 Cal. Rptr. 3d 72, 98 (Cal. Ct. App. 2008). Given that California's highest authority applied the traditional equitable estoppel test as recently as 2010, *see People v. Castillo*, 230 P.2d 1132, 1139 n.10 (Cal. 2010), the Court declines to apply the equitable estoppel test that California's intermediate appellate court set forth in *City of Hollister*.

our *offer* to $1,519,200, which we did on March 24, 2009." (emphasis added)).) Thus, SDCHC's own conduct indicates that no agreement existed between SDCHC and the FDIC; rather, SDCHC made an offer to purchase the note, subject to the FDIC acceptance.

Another, more persuasive, reason exists for declining to apply equitable estoppel. SDCHC seeks to estop Plaintiff from foreclosing on the note based on an alleged agreement between SDCHC and the FDIC, Plaintiff's predecessor-in-interest. However, nowhere do SDCHC's pleadings establish that *Plaintiff* was apprised of the facts underlying the alleged agreement and intended that SDCHC would act on *Plaintiff's* conduct. Absent some showing that a potential equitable estoppel defense against the FDIC should also run against its successor-in-interest, the Court declines to apply equitable estoppel here.

## CONCLUSION

Genuine issues of material fact exist regarding whether Plaintiff is entitled to enforce the note. Accordingly, Plaintiff's motion for summary judgment is **DENIED**.

DATED: March 21, 2011

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge